**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOSEPH AND DONNA NEMETH,**
**VALERIE GARCIA,**

                    **Plaintiffs.**

        **-against-**                                        **3:10-CV-1161**

**VILLAGE OF HANCOCK, ROBERT DAVIS,**
**JAMES ROTZLER, MICHAEL SALVATORE,**

                    **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

**DECISION & ORDER**

**I.      INTRODUCTION**

        Plaintiffs commenced this action pursuant to 42 U.S.C. § 1983 asserting that

Defendants violated their constitutional rights to due process and the equal protection of

the law by failing to enforce the Village of Hancock's zoning regulations against a

neighbor.  Defendants have moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the

action.  Plaintiffs have opposed the motion.  For the reasons that follow, the motion is

granted.

**II.     BACKGROUND[1]**

        Since the 1970s, the Kuehns have operated a tool and dye business from their

_____

        [1]Except as indicated otherwise, the facts are taken from the Complaint.

1

property located in the Village of Hancock, New York ("the Village").  When the Village

adopted zoning ordinances in 1983 placing this property in a residential zone, the Kuehns'

business was designated a legal non-conforming use.  See Aug. 11, 2010 Decision &

Order, p. 2, Nemeth & Garcia v. K-Tooling, Kuehn Manufacturing Co., Perry Kuehn, 2008-

0821 (N.Y.S. Sup. Ct., Delaware Cty.)("State Court Decision")(Def. Ex. B).[2] [3]  The Village

zoning ordinances prohibit unapproved expansions of non-conforming uses.  In 2001, in

order to accommodate the growth of their business, the Kuehns built an additional

structure on their property. Id.[4]

In 2002, Ms. Garcia and her late-husband purchased a residential property on the

west side of the Kuehns' property.  In 2004, the Nemeths purchased a residential property

on the east side of the Kuehns' property.  Mr. Nemeth was aware of the operation of the

Kuehns' business when he purchased his property, testifying in the state court proceeding

that "he was aware of the industrial fans located on both sides of both factory buildings [on

the Kuehns' property], and that the fans faced his property previous to his purchase of it."

---

[2]The Nemeths and Ms. Garcia previously commenced a proceeding in New York State Supreme Court against the Kuehns' business seeking monetary recovery on a theory of nuisance and an injunction limiting the operation of the Kuehns' business on the theory that the business operated in violation of the zoning code of the Village of Hancock.  The matter was tried before the court in July 2010, and the presiding justice, Hon. Molly Reynolds Fitzgerald, issued a Decision and Order finding in favor of the defendants and dismissing Plaintiffs' claims.

[3]On a Rule 12(b)(6) motion, the Court may take judicial notice of a state court decision. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); Brass v. American Film Tech., Inc., 987 F.2d 142, 150 (2d Cir.1993); see also Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes.") (citations omitted); Oliver v. Tepperman, No. 08-CV-3685, 2010 WL 889276, at 1 (E.D.N.Y. Mar. 10, 2010) (taking judicial notice of a state court decision); Farid v. Bouey, 554 F. Supp.2d 301, 313-14 (N.D.N.Y 2008)(on a rule 12(b)(6) motion, the Court may take judicial notice of a state court decision); Piccolo v. N.Y. City Campaign Fin. Bd., 2007 WL 2844939, at *2 (S.D.N.Y. Sept. 28, 2007) (courts may consider matters of which judicial notice may be taken in a Rule 12(b)(6) motion).

[4]It is unknown whether the Village approved the building of this additional structure.

Id.

Plaintiffs allege that "[i]n the period 2006-07, the Kuehns substantially expanded their operation, as measured by increased hours of operation, machinery, revenues and employees." Compl. ¶ 18. In August 2007, "Joseph Nemeth spoke at the Village Board meeting and requested that the Village enforce the municipal zoning ordinance and curtail Kuehns' non-conforming use." Id. ¶ 20. Plaintiffs allege that the then-Mayor instructed the Village Attorney, Defendant Robert Davis, to conduct an investigation into the claim but that nothing was done because Attorney Davis also represented the Kuehns. Compl. ¶¶ 19-24. Plaintiffs assert that "[t]his failure [to investigate and enforce its zoning ordinances] has permitted the Kuehns to continue to impose externalities, including industrial noise and odors, upon the plaintiffs, adversely affecting the use and enjoyment of their premises." Id. ¶ 26.

Contrary to this allegation, however, the evidence at the Nemeths and Garcia's state court trial revealed that after Mr. Nemeth complained to the Village Board, "the investigation was in fact conducted, and that the Village saw no reason to take any action against [the Kuehns]." State Court Decision, p. 3. The investigation included two visits to the Kuehns' property by the Village of Hancock Health Officer, Richard E. Berg, DO, who found no evidence of noxious odors or noise emanating from the property. Id. pp. 5-6. Moreover, the evidence at the state court trial (including Justice Fitzgerald's mutually-agreed tour of the business) established that the noise coming from the business was "minimal." Id. p. 6.

Plaintiffs also assert that the former and present Village of Hancock Code Enforcement Officers, James Rotzler and Michael Salvatore, enforced the Village Zoning

3

Code against Ms. Garcia "and another neighbor on East Front Street," Compl. ¶ 27, yet

failed to enforce the Code against the Kuehns.  In this regard, Plaintiffs allege that the

Code Enforcement Officers prevented Ms. Garcia from erecting a fence without a building

permit although a building permit was not required, <u>see</u> Compl. ¶¶ 28-31, and, in the case

of the unidentified neighbor, required the neighbor to tear down "part of an addition"

because there was not the required "ten foot setback from the neighboring property

owner."  <u>Id.</u> ¶ 32.  "Yet, when the Nemeths sought to enforce the same provision against

the Kuehns, defendants refused to enforce the setback requirement." <u>Id.</u> ¶ 33.  Plaintiffs

contend that the actions and inactions of the Code Enforcement Officers were motivated

by the fact that "the Kuehns are long-time residents of the Village of Hancock and the

Nemeths/Garcias are relative newcomers to the Village."  <u>Id.</u> ¶ 34.[5]

        Plaintiffs contend that by failing to enforce the Zoning Code against the Kuehns,

Defendants' deprived them of their constitutional rights to due process and equal

protection of the law.

## III.    STANDARD OF REVIEW

        "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement

of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Bell Atlantic Corp.</u>

<u>v. Twombly</u>, 127 S. Ct. 1955, 1964 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78

S. Ct. 99 (1957)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does

---

[5]Plaintiffs assert in paragraph 35 of the Complaint that "in the case involving the retainer wall, Rotzler initiated enforcement action against a newcomer to the Village at the instance [*sic*] of a long-time resident." Compl. ¶ 35.  It is unclear whether the "retaining wall" referenced in this paragraph is the same as the "part of an addition" referenced in paragraph 32.

not need detailed factual allegations . . .  a plaintiff's obligation to provide the 'grounds' of

his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." Id. at 1964-65.  "Factual

allegations must be enough to raise a right to relief above the speculative level. . . on the

assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id.

at 1965.  "'[T]he pleading must contain something more . . . than . . . a statement of facts

that merely creates a suspicion [of] a legally cognizable right of action.'" Id. at 1965

(quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d

ed. 2004)).  "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v.

Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).  A complaint

does not suffice "if it tenders naked assertions devoid of further factual enhancement."

Ashcroft, 129 S. Ct. at 1949.  Legal conclusions must be supported by factual allegations.

Iqbal, at 1950.  "Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice."  Id. at 1949.  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Id.  "Where a complaint

pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line

between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S.

557) (internal quotations omitted).

    With this standard in the mind, the Court will address the pending motion to

dismiss.

## IV.    DISCUSSION

### (a)    Due Process

"To demonstrate a violation of due process rights based upon a zoning decision, whether procedural or substantive, a plaintiff must first demonstrate the possession of a federally protected property right to the relief sought."  Puckett v. City of Glen Cove, 631 F. Supp. 226, 236 (E.D.N.Y. 2009)(citations omitted); see Crowley v. Courville, 76 F.3d 47, 52 (2d Cir. 1996).

> It is well settled in this Circuit that a constitutionally protected property interest in land use regulation arises only if there is an entitlement to the relief sought by the property owner. A plaintiff has a "legitimate claim of entitlement" to a particular benefit if, absent the alleged denial of due process, there is a certainty or a very strong likelihood that the benefit would have been granted. Where a local regulator has discretion with regard to the benefit at issue, there normally is no entitlement to that benefit. An entitlement to a benefit arises only when the discretion of the issuing agency is so narrowly circumscribed as to virtually assure conferral of the benefit. The issue of whether an individual has such a property interest is a question of law since the entitlement analysis focuses on the degree of official discretion and not on the probability of its favorable exercise.

Gagliardi v. Village of Pawling, 18 F. 3d 188, 192 ( 2d Cir. 1994)(internal citations, quotations, and alterations omitted); see Schwasnick v. Fields, 2010 WL 2679935, at *6 (E.D.N.Y. June 20, 2010).[6]

As a general rule, "[g]overnment officials . . . are given broad discretion in their decisions whether to undertake enforcement actions." Gagliardi, 18 F. 3d at 192.  New York courts have held that "the decision to enforce ... [town building and zoning] codes rests in the discretion of the public officials charged with enforcement." Young v. Town of

---

[6]("When asserting a due process claim against a governmental entity, the plaintiff must show that the government did not possess discretion over the alleged deprivation.")

Huntington, 121 A.D.2d 641, 642 (2d Dep't 1986); see also Dyno v. Village of Johnson

City, 261 A.D.2d 783, 784 (3d Dep't 1999), appeal dismissed, 94 N.Y.2d 1033 (1999),

leave denied, 94 N.Y.2d 818 (1999); Manuli v. Hildenbrandt, 144 A.D.2d 789, 790 (3d

Dep't 1988);[7] Fried v. Fox, 49 A.D.2d 877, 878 (2d Dep't 1975);[8] Perazzo v. Lindsay, 30

A.D.2d 179 (1st Dep't), aff'd, 23 N.Y.2d 764 (1968).   Indeed, in New York "[i]t is well

settled that zoning boards are vested with broad discretion in interpreting local zoning

ordinances and considering applications of landowners for variances therefrom," including

the discretion to make reasonable determinations whether to allow an expansion of a prior

nonconforming use.  550 Halstead Corp. v. Zoning Bd. of Appeals of Town/Village of

Harrison, 307 A.D.2d 291, 291-92 (2d Dep't 2003); see also P.M.S. Assets, Ltd. v. Zoning

Bd. of Appeals of Village of Pleasantville, 98 N.Y.2d 683, 685 (2002).[9]

Although Plaintiffs point to a provision of the Hancock Village Code that mandates

that the Code Enforcement Officer "must deny" a building permit "[i]f the applicant's plans

do not meet the zoning requirements," see Hancock Village Zoning Code, § 115-55(A),[10]

the instant case does not concern a building permit.  The other provisions of the Zoning

Code cited by Plaintiffs are not drafted with the same mandatory language such to

---

[7] ("[T]he law is by now quite well settled that the decisions of local municipal officials on whether to enforce zoning codes are discretionary and not subject to judicial oversight in a civil suit or by way of mandamus....  Plaintiffs ... cannot allege that official enforcement of the zoning ordinance ... is a mandatory, rather than a discretionary, act.")

[8] ("The decision by city officials to enforce any of the myriad zoning violations existing in a given municipality must, of necessity, be left to the discretion of these officials.")

[9] ("[T]he determination of a zoning board regarding the continuation of a preexisting nonconforming use must be sustained if it is rational and supported by substantial evidence, even if the reviewing court would have reached a different result.")

[10] § 115-55 A also expressly prohibits the Code Enforcement Officer from exercising discretion in denying a building permit to an applicant whose plans do not meet the Village's zoning requirements.

7

proscribe the discretion of the Code Enforcement Officer.  While § 115-55(D) provides that the Code Enforcement Officer "shall" order a party to remedy a Zoning Code violation, this provision inherently presumes that the Code Enforcement Officer has, in the exercise of his discretion, found a Zoning Code violation. See Schwasnick, 2010 WL 2679935, at *6.[11] Likewise, while § 155-14 provides that "a non-conforming building or use shall not be added or enlarged unless such non-conforming building or use is made to conform to the regulations of the district in which it is located," it is inherently a discretionary determination whether "a non-conforming building or use [has been] made to conform to the regulations of the district in which it is located."  Hancock Village Zoning Code, § 115-14.  Thus, even though Plaintiffs directed the Village to what they felt was a zoning code violation by the Kuehns, the response to that complaint was a matter of discretion by the Code Enforcement Officer.  As demonstrated in the State Court proceeding, the Village did investigate Plaintiffs' complaint and found it to be without merit.

Moreover, "there is no due process right in enforcing a law against another person." Schwasnick, 2010 WL 2679935, at *6.[12]  Simply stated, Plaintiffs have no constitutionally protected property interest in the "benefit" of a Zoning Code violation being issued by the Defendants against the Kuehns' use of the their property.

Assuming, *arguendo*, that a protected property interest exists, the claims alleging

---

[11] ("The decision whether to enforce a law is discretionary and cannot support a due process claim.")(citing Deshaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195, 109 S. Ct. 998, 1003, 103 L. Ed.2d 249, 258-59 (1989) (finding there is no "guarantee of certain minimal levels of safety and security"); Gagliardi v. Vill. of Pawling, 18 F.3d 188, 192 (2d Cir.1994)).

[12] (citing Gagliardi, 18 F.3d at 192 (refusing to find a property right in the enforcement of zoning laws against a neighbor's property))

8

procedural and substantive due process violations fail on the second prong of the due

process analysis.  "It is only when [a federally protected property right to the relief sought]

is established that the court may turn to a discussion of the second prong of the due

process analysis, i.e., the sufficiency of any state remedy (in the context of a procedural

due process claim), or, the nature of defendant's conduct (in the context of a substantive

due process analysis)."  Puckett, 631 F. Supp. at 237 (citations omitted).   "As to the

former, the availability of the Article 78 proceeding has been held to provide homeowner

plaintiffs with all of the procedural due process rights to which they were due." Id. (citing

Hellenic American Neighborhood Action Committee v. City of New York, 101 F.3d 877,

881-82 (2d Cir. 1996)).  An Article 78 proceeding was available to Plaintiffs but,

apparently, was not pursued.[13] Accordingly, the procedural due process claims must be

dismissed.

Plaintiffs' substantive due process claim also fails on the second prong of the due

process analysis.

> [S]ubstantive due process rights are violated only by conduct so
> outrageously arbitrary as to constitute a gross abuse of governmental
> authority.  While Section 1983 is often used as a vehicle to challenge local
> land use decisions, federal judicial review of these decisions is extremely
> deferential. As often stated, federal courts hearing civil rights cases do not sit
> as zoning boards of appeal over local zoning decisions. The mere violation
> of state zoning laws is not sufficient to demonstrate conduct so outrageous
> as to violate the substantive component of the due process clause.  Indeed,
> even a state court ruling that state zoning laws have been violated is not,
> standing alone, sufficient to constitute a substantive due process violation.

---

[13] Plaintiffs did seek to enforce the zoning regulations through the plenary jurisdiction of the New York State Supreme Court. See State Court Decision, p. 8.  Relying on the same complaint as underlies the instant case, Plaintiffs "asked [the State Court] for injunctive relief not only on nuisance, but also the allegation that the [Kuehns' and their business] are in violation of the zoning code of the Village of Hancock and ask[ed] the court enjoin the operation of the factory on that basis." State Court Decision, p. 8.

Puckett, 631 F. Supp. at 237 (interior quotation marks and citations omitted).

As indicated above, the New York State Supreme Court determined that (1) the Village did investigate Plaintiffs' complaint, and (2) their complaint of excessive noise and odors from the Kuehns' business was unfounded.  These findings negate any claim that the conduct of the Village in failing to enforce the Zoning Code was "so outrageously arbitrary as to constitute a gross abuse of governmental authority."

Even if such findings had not been made by the State Court, Plaintiffs' Complaint, viewed in isolation from the State Court Decision, fails to set forth conduct so outrageous as to violate the substantive component of the due process clause.  That is, assuming that the Village refused to investigate Plaintiffs' complaint of a zoning violation because the Kuehns were long-time Village residents and Plaintiffs were relative "newcomers," the allegations are insufficient to satisfy the substantive due process standard. See Ruston v. Town Bd. for Town of Skaneateles, 2008 WL 5423038, at *5 (N.D.N.Y. Dec. 24, 2008).[14]

 Plaintiffs do not allege plausible claims for a violation of their substantive due process rights.  Accordingly, the substantive due process claims must also be dismissed.

### (b)    Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution 'is essentially a direction that all persons similarly situated should be treated alike.'" Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir.1995) (quoting City of Cleburne v. Cleburne Living Ctr., Inc., 105 S. Ct. 3249, 3254 (1985)).  "To state an equal

---

[14](To constitute conduct violating the substantive due process standard, "[t]he conduct must be so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.")(citations and interior quotation marks omitted).

10

protection claim, a plaintiff must charge a governmental officer not only with deliberately interpreting a statute against the plaintiff, but also with singling him out alone for that misinterpretation." <u>Gagliardi</u>, 18 F. 3d at 193 (internal quotations and citation omitted). "To establish such intentional and purposeful discrimination, it is axiomatic that a plaintiff must allege that similarly situated persons have been treated differently." <u>Id.</u> Thus, "[t]o establish an equal protection violation in a zoning context, a plaintiff must show treatment different from other similarly situated individuals." <u>Puckett</u>, 631 F. Supp. at 235 (citing <u>Harlen Assocs. v. Incorporated Village of Mineola</u>, 273 F.3d 494, 499 (2d Cir. 2001)).  This is true whether Plaintiffs proceed on a "selective enforcement" or "class of one" theory. <u>See</u> <u>Wood v. Town of East Hampton</u>, 2010 WL 3924847, at *18[15] [16] (E.D.N.Y. Sept. 30, 2010); <u>but see</u> <u>Schwasnick</u>, 2010 WL 2679935, at *5.[17]

Plaintiffs allege that they were treated differently than others with regard to enforcement of zoning ordinances because they were relative "newcomers" to the Village whereas long-time residents were treated more favorably.  However, Plaintiffs compare the proverbial apples with oranges, attempting to equate enforcement of a fence ordinance or a setback rule with enforcement of the Zoning Code's non-conforming use

---

[15]("[A] plaintiff may state an equal protection claim based upon selective enforcement of the law by pleading that: (1) [he was] <u>treated differently from other similarly situated individuals</u> and (2) this differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.")(emphasis added, citations and quotation marks omitted)

[16]("The Supreme Court has 'recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she <u>has been intentionally treated differently from others similarly situated</u> and that there is no rational basis for the difference in treatment.")(emphasis added)

[17]("While the Supreme Court has allowed "class of one actions" against a municipality regarding the enforcement of property laws, such a claim is not available where the plaintiffs are challenging a discretionary action.  Zoning law enforcement is a "classic example" of discretionary behavior that does not give rise to a "class of one" claim.")(citations ommitted)

expansion regulations.  This is insufficient.  In order to prevail, Plaintiffs would have to

allege facts plausibly indicating that "the Municipal Defendants would have enforced the

[Hancock Village Code's non-conforming use expansion regulations] at the request of

another resident whose situation was similar to the [Plaintiffs].  In the absence of any such

factual allegations, the . . . equal protection claim is insufficient as a matter of law."

Gagliardi, 18 F. 3d at 193 (emphasis added).  Plaintiffs have not made sufficient

allegations to plausibly support the similarity requirement of an equal protection claim.

The allegation that the Village enforced the fence regulation against Ms. Garcia is

not similar to the allegation that the Village failed to prosecute Plaintiffs' complaint that the

Kuehns' use of their property "impose[d] externalities, including industrial noise and odors,

upon the plaintiffs, adversely affecting the use and use and enjoyment of their premises."

Compl. ¶ 26; see Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 59-60 (2d

Cir. 2010).[18]  Moreover, Plaintiffs' complaint to the Village Board on this issue was

investigated and was found  – both by the Village and the New York State Supreme Court

- to be without merit.

The allegation in paragraphs 32 & 33 of the Complaint (that the Village enforced a

"ten foot setback" rule against an unidentified neighbor who had constructed "an addition"

yet failed to enforce the same provision "when the Nemeths sought to enforce the same

provision" against the Kuehns) is also insufficient to establish a plausible equal protection

---

[18]("[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves. Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.")(internal quotation marks and citations omitted).

claim.  First, the 10-foot setback rule was not enforced against Plaintiffs so Plaintiffs are not similarly situated to the Kuehns on this issue.  Second, assuming that the Village enforced the 10-foot setback rule against another "newcomer" to the Village, the Complaint does not set forth factual allegations suggesting how the Nemeths "sought to enforce" the 10-foot setback rule against the Kuehns; what part of the Kuehns' property allegedly violated the setback rule; or when the Nemeths brought the information to the Village's attention.  Rather, the allegations in the Complaint are focused on Joseph Nemeth's complaint to the Village Board in 2007 about the Kuehns' business emitting noxious noise and odors and the "expanded" use of the business in terms of hours of operation and employees.  The Complaint alleges that this expansion of the business occurred in 2006-07, yet the Kuehns constructed the second building on their property in 2001 – before the Plaintiffs purchased their properties and well before the alleged 2006-07 business expansion.   Even a liberal reading of the Complaint fails to lead to the conclusion that the location of Kuehns' second building was the basis of Plaintiffs' complaint (via Joseph Nemeth) to the Village Board in 2007.  The allegation of dissimilar treatment in this regard is nothing more than a naked assertion devoid of factual content.

Assuming, *arguendo*, that there was dissimilar treatment in similar situations, Plaintiffs' Complaint fails to set forth sufficient facts plausibly demonstrating that the Defendants' inactions in prosecuting the Kuehns for purported Zoning Code violations (1) were "based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person" such to make out a viable selective treatment claim, or (2) "that there is no rational basis for the difference in treatment" such to make out a viable class of one claim.  Wood,

13

2010 WL 3924847, at *18.  On the first issue, the Complaint merely theorizes that the asserted difference in treatment was because of Plaintiffs' relatively recent relocation to the Village. The allegation is unsupported by anything other than Plaintiffs' supposition that this consideration motivated Defendants' inaction and does not raise the right to relief above the speculative level. See Ashcroft, 129 S. Ct. at 1949-50; see also Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).[19]  On the second issue, the allegations in the Complaint do not exclude the potential that there was a rational basis for the difference in treatment.   With regard to both issues, the Village did investigate the complaint about the Kuehns' business but found it to be without merit.  See State Court Decision. This conclusion was supported by the State Court's determination in that proceeding.  Id. Plaintiffs do not set forth a plausible equal protection claim merely because they did not achieve the result they would have liked.   Accordingly, Plaintiffs' equal protection claim must be dismissed.

## V.     CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss this action [dkt. #15] is **GRANTED** and the action is **DISMISSED**.

**IT IS SO ORDERED**.

DATED:   January 7, 2011

Thomas J. McAvoy
Senior, U.S. District Judge

---

[19]("A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.' ")(quoting Ashcroft, 129 S. Ct. at 1950).

14